FILED
DEC 19 2007
DEC 19, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHELLE DOWNS,<br><br>Plaintiff,<br><br>v.<br><br>AUTO RESOURCES, INC.,<br>d/b/a J.D. BYRIDER OF JOLIET,<br><br>Defendant. | 07CV7122<br>JUDGE BUCKLO<br>MAG. JUDGE KEYS<br><br>Jury Trial Requested |

### COMPLAINT

NOW COMES Plaintiff, MICHELLE DOWNS, by and through her attorneys, LISA KANE & ASSOCIATES, P.C., and complaining of Defendant, AUTO RESOURCES, INC., d/b/a J.D. BYRIDER OF JOLIET, states as follows:

### PRELIMINARY STATEMENT

1. This is an action seeking redress for the violation of rights guaranteed to Plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and by the laws of the State of Illinois. Plaintiff seeks mandatory injunctive relief and damages to redress the discriminatory employment practices engaged in by Defendant.

### JURISDICTIONAL STATEMENT

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343(a)(3) and (4) and 28 U.S.C. § 1331 to secure protection and redress deprivation of rights secured by 42 U.S.C. § 2000e et. seq. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. With respect to Plaintiff's state law claims, this Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367.

## VENUE

3. Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2).

## PARTIES

4. Plaintiff, MICHELLE DOWNS, is a female citizen of United States who resides in Illinois.

5. Defendant, AUTO RESOURCES, INC., d/b/a J.D. BYRIDER OF JOLIET, is a corporation properly recognized and sanctioned by the laws of the State of Illinois, and at all times did and continues to do business in Illinois. Defendant is subject to the jurisdiction of the Court as an employer within the meaning of 42 U.S.C. § 2000e(b), as Defendant has continuously and does now employ more than fifteen (15) employees and is engaged in an industry that affects commerce.

## PROCEDURE

6. Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") on November 30, 2007. The EEOC issued Plaintiff a Notice of Right to Sue on her Charge of Discrimination on December 11, 2007, which was received on December 13, 2007. The Notice of Right to Sue entitles Plaintiff to initiate a civil action in the appropriate forum within ninety (90) days of the receipt of said Notice. Plaintiff has initiated this action within said ninety (90) day period.

## COUNT I – TITLE VII – SEXUAL HARASSMENT

7. Paragraphs one (1) through six (6) are incorporated by reference as if fully set out herein.

8. Plaintiff began working for Defendant as a sales associate in September 2007.

9. Throughout her tenure with Defendant, Plaintiff has performed to Defendant's

2

reasonable expectations, as evidenced by her October 2007 award of Sales Associate of the Month and positive feedback from management and ownership of Defendant.

10. Beginning with the inception of her employment with Defendant in September 2007, Plaintiff's immediate supervisor, Manager Ben Mutz, has subjected Plaintiff to a relentless course of unwanted sexual propositions, inappropriate touching, and a continuous campaign of hostile, abusive, and sexually harassing conduct within the workplace. Plaintiff began to address the issues of sexual harassment with management of Defendant from the outset of her employment.

11. In addition, Manager Mutz has abused his authority over Plaintiff by subjecting her to abusive, demeaning, and belittling comments in front of her co-workers, as a means of psychological torment aimed at coercing Plaintiff to succumb to his repeated unwanted sexual propositions.

12. Despite Plaintiff's repeated and express oppositions to his conduct, Manager Mutz has dauntlessly continued his sexually harassing course of conduct aimed at Plaintiff.

13. Manager Mutz deliberately created an abusive work environment for Plaintiff on the basis of her gender, female, by subjecting her to a continuous course of sexual advances, offensive comments, obsessive inquiry into Plaintiff's sexual behavior, and by fixating on Plaintiff's physical appearance, instances of which include, but are not limited to, the following:

(a) Upon inception of Plaintiff's employment with Defendant, Manager Mutz informed Plaintiff that she should "go make nice" with Ken, Underwriter for Defendant, and "give him a hug" because Ken played a vital role in closing sales with customers. Manager Mutz also informed Plaintiff that she should "do what [he] say[s], because [he] can make [her] a lot of money."

(b) Throughout her employment with Defendant, Manager Mutz would offer Plaintiff

unsolicited details of his sexual encounters. For example, he repeatedly informed Plaintiff that he slept with numerous females because he had mind control over women and had mastered the ability to "finesse" them into sleeping with him. On one such occasion, Manager Mutz called Plaintiff into his office and described an encounter he had with a woman who insisted she did not wish to engage in anal intercourse with him. Manager Mutz continued to express that the woman eventually begged him to "pack it in." Manager Mutz elaborated, despite protest from Plaintiff, that "whenever a woman says she does not wish to partake in anal intercourse, she really means yes." Later that day, Manager Mutz barged into Plaintiff's office, shouting, "pack it in baby, pack it in!" In addition to the aforementioned incident, Manager Mutz repeatedly shared stories with Plaintiff of his time in the service, during which he served as an assistant to Clergy. Manager Mutz would flout the fact that a large number of officer's wives would proposition him for sexual favors on a daily basis. Plaintiff consistently requested that Manager Mutz refrain from telling such stories and using vulgarity in her presence, to no avail.

(c)     On numerous occasions, Manager Mutz would inquire of Plaintiff regarding details of her sexual behavior. In one instance, Manager Mutz asked Plaintiff if she swallowed when she performed oral sex. Though Plaintiff continually refused to answer Manager Mutz's inappropriate inquires, Manager Mutz refused to cease his sexually charged questioning of Plaintiff.

(d)     Manager Mutz continuously informed Plaintiff that he was "well-endowed." One afternoon, after Plaintiff sold a car to a female customer, Manager Mutz called Plaintiff into his office and told her the reason she made the sale was because "the mother was staring at [his] crotch the whole time and [he is] well-endowed." On other occasions, Manager Mutz would enter Plaintiff's office, prop his leg up on top of her desk, and gyrate his pelvic area in close proximity to

her face. When Plaintiff complained, Manager Mutz stated that he was stretching. Though Manager Mutz stopped gyrating and removed his leg from Plaintiff's desk, he remained in her office hovering over Plaintiff's desk in the immediate vicinity of her person while he continued to address her.

 (e) Throughout her tenure with Defendant, Manager Mutz reiterated to Plaintiff that they could accomplish any sale working as a pair, because they were both "well-endowed." While making such comments, Manager Mutz would not only stare inappropriately at Plaintiff's breasts, but would also poke Plaintiff in her side and/or wrap his arms around her body, just below her breasts.

 (f) Manager Mutz made comments about Plaintiff's appearance and sexual appeal. For instance, Manager Mutz told Plaintiff she should consider working at other dealerships where she could make more money because she was "not hard to look at and well-endowed." Further, Manager Mutz continuously attempted to persuade Plaintiff to join his marketing business for anti-aging vitamins, professing her guaranteed success because of her "strong sex appeal." On other occasions, Manager Mutz mocked Plaintiff and told her that the vitamins could help her get in shape, lose weight, and get rid of her grey hairs. Though Plaintiff perpetually refused Manager Mutz's solicitations, he continued to harass her about his vitamins, stating that they increased his sexual drive and stamina and that he believed they worked on women as well because the vitamins gave one woman he knew a "hot ass."

 (g) After Plaintiff repeatedly refused Manager Mutz's advances and complained to him regarding his inappropriate behavior, Manager Mutz took to embarrassing Plaintiff in front of her co-workers and customers. For example, during one meeting between Plaintiff, Manager Mutz, and a potential customer, Manager Mutz laughed at Plaintiff, and referred to her as a "one-month

wonder," in reference to her October 2007 sales award.

    (h)    As Manager Mutz began to make arrangements for Defendant's sales team to attend a training program in Carmel, Indiana, he insistently asked that Plaintiff share a room with her male co-workers, Jason Kruger and George Peters. Though Plaintiff repeatedly refused and informed Manager Mutz that she was not comfortable with such an arrangement, Manager Mutz continued his attempts to persuade her to share a room with male sales associates Kruger and Peters. When Manager Mutz eventually comprehended that Plaintiff would not acquiesce to his requests, he informed Defendant's sales team that Plaintiff forced the team to stay at a lower-quality hotel because she would not share a room with male sales associates Kruger and Peters.

    14.    Throughout the course of Plaintiff's employment, Manager Mutz repeatedly displayed his sexually harassing conduct in the presence of Defendant's Owner, Mike Burgestone. Upon information and belief, Owner Burgestone took no substantive action towards remedying Manager Mutz's inappropriate and demeaning treatment of Plaintiff, nor was Manager Mutz subjected to any discipline as a result thereof.

    15.    Upon the onset of Manager Mutz's afore-alleged conduct, Plaintiff vehemently opposed and expressed her objections to the treatment she endured to General Manager Tom Gorman, Human Resources Representative Kristy, and Human Resources Representative Angela on numerous occasions, to no avail.

    16.    When Plaintiff reported Manager Mutz's behavior to Human Resources Representatives Kristy and Angela, she was advised to apprise General Manager Gorman of Manager Mutz's sexually harassing behavior. Human Resources Representatives Kristy and Angela took no action reasonably designed to prevent Manager Mutz from continuing to create a sexually hostile

work environment for Plaintiff.

17. Plaintiff subsequently reported Manager Mutz's sexually harassing behavior to General Manager Gorman on numerous occasions, including but not limited to, informing him of Manager Mutz's offensive touching, demeaning behavior, and relentless stories of his sexual encounters. During such occasions, Plaintiff explained that she was uncomfortable with the way Manager Mutz treated her.

18. When Plaintiff first reported Manager Mutz's behavior to General Manager Gorman in the beginning of October 2007, General Manager Gorman admitted to Plaintiff that he thought Manager Mutz "got too close" to her. Immediately following Plaintiff's first complaint to General Manager Gorman, Manager Mutz called Plaintiff into his office, apologized, and attempted to embrace Plaintiff by pulling her towards his chest.

19. When Plaintiff returned to General Manager Gorman to report the same offensive behavior later that month, General Manager Gorman generally laughed off Plaintiff's complaints, and assured her that he would speak to Manager Mutz.

20. Plaintiff's complaints to General Manager Gorman did nothing to alleviate Manager Mutz's relentless and continuous campaign of hostile, abusive, and sexually harassing conduct towards Plaintiff.

21. On November 12, 2007, Plaintiff returned to General Manager Gorman's office to report that Manager Mutz's sexually harassing behavior had escalated to an intolerable level of offensiveness. General Manager Gorman replied, "this too shall pass." Upon conclusion of the meeting, General Manager Gorman informed Plaintiff that he would once again speak to Manager Mutz regarding his behavior. That evening, Manager Mutz approached Plaintiff and asked her "what

the fuck" she was doing in "throwing him under the bus?"

22.     On November 15, 2007, three days after complaining to General Manager Gorman regarding Manager Mutz's behavior, Defendant terminated Plaintiff's employment during a meeting with Manager Mutz and General Manager Gorman. General Manager Gorman explained to Plaintiff that Manager Mutz was not going anywhere, and that she could no longer work for Defendant if she could not work for Manager Mutz.

23.     The aforementioned acts and omissions of Defendant constitute unlawful harassment against Plaintiff, because of her sex, female, in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

24.     As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered damages, including but not limited to, lost and future wages and benefits, and physical and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, MICHELLE DOWNS, prays for judgment against Defendant and respectfully requests that this Court:

A.  Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff under appropriate Federal Law;

B.  Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of sex;

C.  Order Defendant to make whole MICHELLE DOWNS by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D. Grant Plaintiff actual, consequential, compensatory, punitive and any other damages the Court may deem appropriate against Defendant;

E. Grant Plaintiff her attorney fees, costs, disbursements; and

F. Grant Plaintiff such further relief as this Court deems necessary and proper in the public interest.

## COUNT II – TITLE VII – RETALIATION

25. Paragraphs one (1) through twenty-two (22) are incorporated by reference as if fully set out herein.

26. Plaintiff reported sexual harassment to Human Resources and management of Defendant continuously throughout the duration of her employment to eradicate Manager Mutz's behavior, to no avail.

27. As a direct and proximate result of Defendant's retaliatory action against Plaintiff, Plaintiff has suffered injury, including but not limited to, lost and future wages and benefits, and physical and emotional harm.

28. Defendant deliberately and maliciously retaliated against Plaintiff because of her participation in a protected activity in violation of Plaintiff's federally protected civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, MICHELLE DOWNS, prays for judgment against Defendant and respectfully requests that this Court:

A. Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff under appropriate Federal Law;

B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which unlawfully discriminates on the basis of sex, and retaliates against an individual for complaining of an unlawful employment practice;

C. Order Defendant to make whole MICHELLE DOWNS by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D. Grant Plaintiff actual, consequential, compensatory, punitive and any other damages the Court may deem appropriate against Defendant;

E. Grant Plaintiff her attorney fees, costs, disbursements; and

F. Grant Plaintiff such further relief as this Court deems necessary and proper in the public interest.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

29. Paragraphs one (1) through twenty-two (22) are incorporated by reference as if fully set out herein.

30. Plaintiff seeks respondeat superior liability against Defendant for the tortious conduct of its management employees, Ben Mutz, Manager, Mike Burgestone, Owner, and Tom Gorman, General Manager, as the alter egos of Defendant.

31. Defendant's Manager Mutz, Owner Burgestone, and General Manager Gorman have engaged in extreme and outrageous conduct in subjecting Plaintiff to an overt, unbridled, and malicious course of conduct designed to psychologically and emotionally abuse Plaintiff. Examples of such conduct have been detailed in the preceding paragraphs.

32. Defendant, acting by and through its management employees, Manager Mutz, Owner

Burgestone, and General Manager Gorman, intended to cause Plaintiff severe emotional distress, or knew that there was a high probability that Plaintiff would suffer such distress, when it subjected Plaintiff to a course of conduct designed to psychologically and emotionally abuse Plaintiff.

33. In their positions with Defendant, Manager Mutz, Owner Burgestone, and General Manager Gorman exercised a substantial degree of control over Plaintiff's terms and conditions of employment and abused their authority over Plaintiff by subjecting her to outrageous conduct.

34. Plaintiff has suffered and continues to suffer extreme emotional distress as a direct and proximate result of Defendant's extreme and outrageous conduct.

35. Defendant, acting by and through its officers Manager Mutz, Owner Burgestone, and General Manager Gorman, intentionally subjected Plaintiff to egregious and abusive treatment which Defendant knew would cause Plaintiff to suffer severe emotional distress.

36. Plaintiff continues to suffer the severe emotional and psychological trauma inflicted upon her by Defendant and has sought treatment from a mental health professional as a result thereof. Plaintiff continues to struggle with the effects of Defendant's extreme and outrageous conduct on a daily basis.

37. The aforementioned acts and omissions of Defendant constitute intentional infliction of emotional distress, in violation of the laws of the State of Illinois.[1]

## PRAYER FOR RELIEF

---

[1] Despite the similar facts alleged in previous counts of this Complaint, Plaintiff's claim for intentional infliction of emotional distress will not be subject to preemption by the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/8-111(C), as Count III may be proven independent of the legal duties furnished by the IHRA. See Naeem v. McKesson Drug Co., 444 F.3d 593, 604 (7th Cir. 2006).

WHEREFORE, Plaintiff, MICHELLE DOWNS, prays for judgment against Defendant and respectfully requests that this Court:

A. Order Defendant to make whole MICHELLE DOWNS by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

B. Grant Plaintiff any consequential, compensatory, emotional pain and suffering, and any other damages that the Court may deem appropriate; and

C. Grant Plaintiff such further relief as this Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

38. Plaintiff requests a jury trial on all issues of fact and law raised by the allegations in this Complaint.

Respectfully submitted,

MICHELLE DOWNS, Plaintiff,

By: _____
Lisa Kane, Attorney for Plaintiff

LISA KANE & ASSOCIATES, P.C.
Attorney for Plaintiff
120 South LaSalle Street, Suite 1420
Chicago, Illinois 60603
(312) 606-0383
Attorney Code No. 06203093

## Verification

I, Michelle Downs, declare under penalty of perjury that the foregoing is true and correct.

Executed on December 18, 2007, 2007.

Michelle Downs

EEOC Form 161-B (3/98)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | CERTIFIED MAIL NO: 7099-3400-0018-8813-1992 CP ATTY. | From: | Chicago District Office |
|---|---|---|---|
| | Michelle L. Downs<br>2347 White Birch Lane, #102<br>Joliet, IL 60435 | | 500 West Madison St<br>Suite 2800<br>Chicago, IL 60661 |

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2008-01099 | Sylvia Bustos,<br>Investigator Support Asst | (312) 353-8783 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_John P. Rowe_     12/11/07
John P. Rowe,     (Date Mailed)
District Director

Enclosures(s)

cc:     J.D. BYRIDER

DEC 1 3 2007